whom the assignment was made, and whose claim absorbed the larger part of the fund, cannot be questioned. The balance (about $100) was directed to be paid to Mayer & Martin, on account of their bill for extra work. The master states that the appropriation of the money due for extra work was not disputed by any of the parties at the trial, and may be considered as made by consent. The decree should be affirmed, with costs.

Decree unanimously affirmed.

---

NAUM S. LUND, appellant,

*v.*

THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, respondent.

A purchaser at a public sale of lands, contrived and carried out in order to defraud the creditors of the owner, is bound by the fraudulent acts of those who represented him in the transaction, although he was not personally present, and swears that he was ignorant as to the conduct of the sale.

---

On appeal from a decree of the chancellor, entered by advice of Hon. Amzi Dodd, as special master, whose opinion follows:

THE MASTER.

The mortgage sought to be foreclosed in this suit was executed and delivered to the complainants by Oscar F. Lund and wife, in October, 1870, to secure the payment, with interest, of the sum of $8,000, loaned to them by the complainants. The mortgaged premises are in Jersey City. A decree *pro confesso* has been taken against all the defendants except Naum S. Lund, the father of the mortgagor. He has filed an answer, setting up that he holds the prem-

ises free and clear of the mortgage, by virtue of a deed of conveyance to him made by the sheriff of Hudson county, on the 21st day of December, 1871, about a year and a quarter after the delivery and recording of the mortgage. The deed of conveyance by the sheriff was made under an execution on a mechanics lien judgment entered in the Hudson circuit, September 1st, 1871, for the sum of $193.75, besides costs. The lien claim was filed in June, 1872. The lien itself attached prior to the giving of the mortgage.

The question in this case is the single one, whether the deed from the sheriff is valid against the complainants. I am of opinion that it is not. I think that the sale under which the deed was given was a fraudulent scheme for getting control of the mortgaged premises, without the knowledge of the complainants and the other creditors, and to their prejudice. The defendant, Naum S. Lund, to whom the deed was given, resided in Boston, and seems to have furnished the money bid at the sale, which was the sum of $280. In his testimony he disclaims all knowledge of any damaging facts involved in the sale, and it may be that he was innocent of such knowledge, though the circumstances are strongly suggestive of the contrary belief. But if he had no actual and positive knowledge, he is affected by the knowledge of those who acted for him, and cannot profit by their unconscionable acts.

Oscar F. Lund, after having procured delays from time to time, in the collection of the lien debt and judgment, made an arrangement with the plaintiffs to assign their judgment to Charles E. Bigelow, who, it is plain from the evidence, took it solely for the benefit of Oscar F. Lund. The assignment to him was on the 13th of December, 1871, and on the 21st of the same month, Oscar F. Lund and Bigelow caused the premises to be struck off to Naum S. Lund, who was not present at the sale, and who swears that he knew nothing about it at the time, and accepted implicitly what was done for him. The evidence shows, I think, with unmistakable clearness, that the whole

Lund *v.* Equitable Life Assurance Society.

arrangement was concerted and carried out so as to bring about a sale at a merely nominal sum (the premises being worth from $12,000 to $20,000) without the knowledge of the complainants, and without competition from other bidders. The attempt to defeat the complainants' mortgage by setting up this conveyance cannot prevail.

I will advise a decree in favor of the complainants, with costs.

*Mr. G. Collins* and *Mr. B. Williamson,* for appellant.

I. The normal effect of a mechanics lien judgment and sale, such as those under which the appellant claims, would be to cut out the respondent's mortgage. Such is substantially the decision in the case in this court of *Jacobus* v. *Mut. Ben. Life Ins. Co., 12 C. E. Gr. 604.*

II. There is nothing in this case to except it from the normal rule. The undisputed (or at least uncontradicted) facts are :

(1) Oscar F. Lund bought land, took title in his own name, and built a house thereon—all with Joseph Palmer's money.

(2) Oscar F. Lund, having misappropriated a part of Palmer's money, borrowed from the respondent $8,000, giving his bond, secured by the mortgage of himself and wife on said property.

(3) Between the application for the loan and the giving of the mortgage, Oscar F. Lund had conveyed the property to Palmer, to whom, in equity, it belonged; but the deed had not been recorded, and, lest the loan might fail, he concealed the fact of such conveyance, and, with his wife, executed the mortgage.

(4) The deed to Palmer was afterwards recorded.

(5) Leonard & Son filed their lien claim against Oscar F. Lund (builder) and Palmer (owner), and proceeded to judgment, and advertised the property for sale. There is no pretence of any fraud or collusion in which they participated,

or of which they had knowledge. They were simply enforcing their legal rights.

(6) Neither Oscar F. Lund nor Joseph Palmer had any money, and neither of them could have stopped the sale. Oscar F. Lund had no interest in the matter, except that he was personally liable on the judgment and on respondent's bond and mortgage (though, as to the latter, he did not know that it would be affected by the sale).

(7) Desiring to save the property for Palmer, because he had contracted Leonard's debt, and had had enough money from Palmer to pay it, Oscar F. Lund induced Bigelow to buy the judgment and hold it a few days, during which time he expected to get money to pay it.

(8) Oscar F. Lund failed to get the money, and Bigelow refused to wait longer, and caused the sheriff to sell. Learning from Oscar F. Lund that the appellant would, doubtless, be willing to buy, Bigelow bid it in for him, and the appellant, as soon as he was informed of it, ratified the purchase, and sent on the money for the deed.

It is said that Oscar F. Lund was either *cestui que trust* or agent of the appellant, and that his knowledge binds the latter, but we cannot see why Oscar F. Lund himself, with all the knowledge he had in the premises, could not legally have bought on his own account, except for the fact that he was bound to pay Leonard & Son's debt, and so his purchase might have been held to be a payment; but why he could not act as another's agent, we fail to discern. His inability to buy, if it existed, did not depend on his knowledge, but on his relation to the parties. It can hardly be claimed that knowledge by the appellant of the facts which, it is claimed, Oscar F. Lund knew, would have precluded him from attending the sale in person, and buying the property. It is absurd to say that, because his agent could not have bought as a principal (if, indeed, he could not), therefore he who could have so bought must be deprived of the benefit of his purchase. If, indeed, the purchase by the appellant was in trust for Oscar F. Lund,

there is a show of right in the respondent's case, but it is the sheerest assumption that such was the fact.  Oscar F. Lund had not a dollar in the world, and could not have saved the property from sale by any possibility.  The proof is positive and unchallenged that appellant bought with his own money and for his own use.  Had he refused to ratify the purchase, there would have been a new sale.

Granting that appellant so bought, there cannot be any question of fraud or collusion in the case.  It would be impossible in the nature of things.

No one owed the respondent a legal duty to give it information of the proposed sale.

The " commencement of the building," before their mortgage was given, was legal notice to them of all that has occurred.  They have suffered through the rigor of the law and their own negligence.

It is at the position and rights of Leonard & Son (the lien judgment creditors) the court must look; and to that position and to those rights the purchaser has succeeded.  *Basset* v. *Nosworthy, 2 W. & T. Lead. Cas. in Eq. (4th Am. ed.) 32, 33; Le Neve* v. *Le Neve, Id. 224–5.*

The respondent's own case, however, shows that there was no fraud or collusion.  Oscar F. Lund's course, after he discovered that the respondent's mortgage was cut off, proves it.  He strove earnestly to induce the appellant to revive the respondent's mortgage.  The appellant decided to take the judgment of the law upon his duty.  (*Case p. 36.*)  Surely the court, which is only asked to declare the law, cannot blame him for that.  What he may hereafter do of grace, is for his own conscience.

III.  Respondent's counsel raised, below, some question as to the effect of the lien, assuming that the title to property was in Oscar F. Lund and wife, as joint tenants, when the building was erected.  It was claimed that there could not be a lien on a married woman's land for her husband's debt, and, Oscar F. Lund being now dead, that the lien was gone.  There was no proof on the subject of title; all that is

claimed as proof is the recital in the mortgage, and the extrajudicial affidavit annexed to it, by Oscar F. Lund and wife, that their title was perfect &c.; but this is not proof, and the appellant insists, before this court, that the title was in Oscar F. Lund alone. If even the title was in him and wife, the court cannot assume that they were joint tenants, or seized of that peculiar estate of husband and wife in land *per tout et per my*, for not every tenancy of husband and wife is such. It depends upon the time, kind and number of conveyances by which the estate is created, and the court, in the absence of proof on those points, will assume a tenancy in common, which, at worst, gives appellant half the property. There was no issue of title in the pleadings, and the point is a surprise to us, and should not be considered. We submit, also, that the judgment in the lien suit directly involved the question of title, and concludes the respondent. The point, however, is of no weight, because of the statute passed a few months before this building was begun (*Rev. p. 669 § 9*), which gives a lien on a married woman's land, unless she files a dissent to the erection of the building.

The master seems to have considered this point unworthy of notice.

*Mr. J. Vanatta*, of counsel with respondent.

I. The title, if any, made by lien claim, has expired. The work and materials, for which the lien claim was filed, were furnished in July and August, 1870.

The alleged lien, if it attached to the property, did so before September 1st, 1870. It would be held to relate back to the commencement of the building, which, the answer avers, was in May, 1870.

Then, upon whose estate was the lien? Clearly only that of Oscar F. Lund; no claim of lien is made against the wife of Oscar F. Lund or her estate. The wife's estate could not be bound or affected by a building erected by

her husband. *Johnson* v. *Parker, 3 Dutch. 239 ; Nix. Dig. 572 § 4; Id. 582 § 70; McIntosh* v. *Johnston, 10 C. E. Gr. 242.*

The wife was not seized of a moiety, but of the whole, subject to having her whole estate defeated if she died before her husband. *4 Kent Com. 362; Doe* v. *Parrott, 4 T. R. 652.*

The sole deed of the husband, made during the life-time of the wife, would have been void. *Bell on Law of Property 396 ; Green* v. *King, 2 W. Black. 1211; Black* v. *Anderson, 2 Vern. 120; Roper on Husband and Wife 51.*

It has been held, in favor of creditors, that a lien claim or judgment against, or mortgage by, the husband alone, will take such rights in the property as the husband has; but, if the wife survives him, those rights all entirely end, and cease at his death. *Washburn* v. *Burns, 5 Vr. 18; Den* v. *Gardner, Spen. 556.*

Now, then, it is clear that the utmost that the purchaser under the lien claim could take was such estate as Oscar F. Lund had when the lien attached. Then, when Oscar F. Lund died, all the estate he ever had had in that land instantly ceased, because his wife survived him. See order of September 28th, 1875, in this cause. That order shows that Oscar F. Lund had died, and that his wife survived him.

If the sheriff's deed, made in pursuance of the judgment on the lien claim, conveyed any estate, the estate, whatever it was, ceased when Oscar F. Lund died. That ends the defence.

II. Naum S. Lund was trustee of and for Oscar F. Lund, or else the latter was agent for his father. In either phase the title of the father is affected by the fraud of the son.

As to the trust:

(1) The relationship of the parties, and the manner in which the father's pretended purchase was made, repel the idea and exclude the belief that the purchase was adverse to the son.

(2) Oscar F. Lund talked and acted as the *cestui que trust.* As to the fraud:

Palmer was not produced as a witness, nor was Hoagland, nor the letters about the premises.

It is clear that, if the son was not the principal, he was the active agent of his father in the purchase of this property; the father, therefore, is in no better position than the son. *Dunlap's Paley on Agency 324; Le Neve* v. *Le Neve, 2 Lead. Cas. in Eq. 23.*

On primary and fundamental principles, as against the complainant, the sheriff's sale and conveyance to Naum S. Lund was and is void, because the complainant had no notice of the lien claim or of the suit thereon, nor of the sheriff's sale.

Under such circumstances, to direct and destroy the complainant's rights in the land, is contrary as well to natural as judicial justice. *State* v. *Mayor of Jersey City, 4 Zab. 666; Freeholders of Hudson* v. *State, 4 Zab. 718; Van Tilburgh* v. *Shann, Id. 740.*

The only defence to the complainant's bond and mortgage, and the relief prayed for is, therefore, illegal, unjust, inequitable and insufficient, and the complainant should have a decree pursuant to the prayer of the bill.

PER CURIAM.

This decree unanimously affirmed.

---

EDWIN F. WELLS and wife, appellants,

*v.*

CHARLES PARTRIDGE, respondent.

On appeal from a decree of the vice-chancellor, whose opinion is reported in *Partridge* v. *Wells, 3 Stew. 176.*